**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION**

CHAD R. OLDHAM                                                                                           APPELLANT

v.                                           No. 3:11CV00143 JLH

MARK T. MCCARTY, Chapter 13 Trustee;
and A. JAN THOMAS, JR., Chapter 7 Trustee                                          APPELLEES

**OPINION AND ORDER**

This is an appeal from an order of the Bankruptcy Court for the Eastern District of Arkansas, disciplining Chad Oldham for filing a bankruptcy petition after being suspended from practice in that court. Oldham appealed and elected for this Court to hear the appeal pursuant to 28 U.S.C. § 158(a)(1) and Rule 8001 of the Federal Rules of Bankruptcy Procedure. The parties have fully briefed the issues, and the Court has heard oral argument. For the following reasons, the bankruptcy court is affirmed.

**I.**

The events that led to the discipline from which Oldham appeals involve two separate actions in the bankruptcy court. In the first action, Oldham agreed to file a bankruptcy petition on behalf of Charles and Denise Burnett and to represent them throughout the bankruptcy proceedings. The Burnetts later alleged that Oldham had failed to file their bankruptcy petition in time to prevent a foreclosure sale of their home, was not involved in their case, had not provided them with legal advice, and had misrepresented that they wanted to surrender their home. On August 23, 2010, the United States Trustee filed a Motion to Examine Fees Paid to Attorney, pursuant to 11 U.S.C. § 321(b). On September 28, The bankruptcy court issued an Order to Show Cause against Oldham, and a hearing was held on January 6, 2011. On April 15, the bankruptcy court issued a

Memorandum Opinion and Order ("the Burnett Order") granting the motion to disgorge fees and ordering as follows:

> **ORDERED** that the Trustee's Motion to Disgorge Fees is granted. Mr. Oldham is ordered to refund attorney fees in the amount of $526 to the Debtors within **fourteen (14) days** of the entry of this Order; it is further
> **ORDERED** that Mr. Oldham shall file a certificate of compliance with this Court within **fourteen (14) days** of entry of this Order, averring that the fees have been turned over to the Debtors. Failure to timely pay the fees and file the certificate may be grounds for contempt; it is further
> **ORDERED** that this Opinion will be forwarded to the Arkansas Supreme Court's Committee on Professional Conduct as a complaint against Mr. Oldham; it is further
> **ORDERED** that Mr. Oldham is suspended from appearing before, or filing pleadings and other documents in the United States Bankruptcy Courts, until such time that the Arkansas Supreme Court's Committee on Professional Conduct has reviewed this matter and made its determination. This suspension shall take effect immediately, except Mr. Oldham shall be allowed a period of **fourteen (14) days** from the entry of this Order to make arrangements for the continued protection of his client's interests.

*In re Burnett*, No. 3:09BK13432, 450 B.R. 116, 138 (Bankr. E.D. Ark. 2011).

On February 23—before the bankruptcy court issued the Burnett Order—Oldham met with Joshua and Amy Andrews for an initial consultation regarding their prospective bankruptcy petition and agreed to represent them. On March 18, a complaint was filed in state court against the Andrews by a creditor. On April 7, the Andrews provided documents to Oldham, who prepared the bankruptcy petition between that date and April 13. On April 15, the bankruptcy court entered the Burnett Order. Oldham met with the Andrews on April 19 so that they could execute their bankruptcy petition but did not inform them that he had been suspended and would be unable to represent them throughout their bankruptcy case. He filed their petition the next day.

Upon learning that Oldham had filed a petition while suspended from practice, the bankruptcy court issued an Order to Appear and Show Cause why Oldham had not violated the

Burnett Order. A hearing was held on May 5. Oldham argued that he reasonably believed that filing the Andrews' bankruptcy petition fell within the fourteen day exception because there was a risk that the state court action would result in a default judgment and garnishment proceeding and because Joshua Andrews was concerned that he would be terminated if his employer learned about his employment status through the garnishment order. Oldham further explained that he had done everything that was necessary to filing the petition before the Burnett Order was entered, and the Andrews were pushing him to file their petition. Oldham said that filing the petition quickly was in the Andrews' best interest because it would automatically stay the state court action.

On June 13, the bankruptcy court issued an Order of Contempt. The bankruptcy court found that although a default judgment theoretically could have been entered against the Andrews on April 7, 2011,[1] which was the date the Andrews gave Oldham a copy of the complaint and summons, Oldham did not file the bankruptcy petition until thirteen days later. The bankruptcy court noted that the bankruptcy code permits an attorney to file a skeleton petition—a point originally stated in the Burnett Order. Because Oldham spent six days preparing the petition and then waited six more days for the debtors to sign it, during which time a default judgment and garnishment (so far as he knew) could have been entered, the bankruptcy court concluded that Oldham did not file the petition because of exigent circumstances. Furthermore, the bankruptcy court found that Oldham did not know the date when a default judgment in the state action might be entered; and did not list the lawsuit on the Statement of Financial Affairs, which specifically requests information regarding

---

[1] Oldham did not know when the Andrews were served with summons and complaint, so he did not know when their answer was due. The complaint was filed and the summons was issued on March 18, 2011, so they could not have been served before that date. Assuming that the summons and complaint were served on the date they were issued, the answer to the complaint would have been due on April 7, 2011. *See* Ark. R. Civ. P. 12(a)(1).

lawsuits to which the debtors are a party and which is signed under penalty of perjury. According to the bankruptcy court, these findings significantly undermine Oldham's claim that he filed the Andrews' bankruptcy petition out of concern about the effects of the state action.

The bankruptcy court also concluded that Oldham's explanation—that he filed the new case because he had already completed the petition, and the debtors had called him continuously to urge along the process—did not justify Oldham's conduct. The bankruptcy court pointed out that the filing of a bankruptcy petition imposes responsibilities upon an attorney, including the duty to provide competent representation and the duty to represent the client in all matters. *See In re Egwim*, 291 B.R. 559 (N.D. Ga. 2003). The bankruptcy court also found that Oldham had contractually agreed to represent the debtors at the section 341(a) meeting, to represent the debtors on any objections to discharge filed by creditors for an additional fee, and to amend the debtors' schedule if needed. Further, the Andrews were required to complete a Financial Management Course, and Oldham testified that the debtors had debts that would need to be affirmed. Because Oldham knew he could not perform any of these duties after April 15, 2011, filing the petition after that date, especially without obtaining the Andrews' informed consent, was not in the interest of the debtors but rather opposed to it. Based on these findings, the bankruptcy court concluded that the mere fact that the debtors wished to file bankruptcy did not justify Oldham's decision to do so while suspended. In fact, the bankruptcy court concluded that filing the petition without informing the Andrews of his suspension and inability to fulfill his duty to them was evidence that Oldham lacks the capacity to practice law in a professional and ethical manner. In the final paragraph of the Order of Contempt, the bankruptcy court:

> **ORDERED** that Mr. Oldham is sanctioned in the form of his continued suspension from practice before the United States Bankruptcy Courts in accordance

>with the Suspension Order entered April 15, 2011, in Case No. 03:09-bk-13432; it is further,
>
>**ORDERED** that Mr. Oldham is sanctioned in the form of a referral of this matter to the Arkansas Supreme Court's Committee on Professional Conduct as a supplement to the Court's previously submitted complaint against Mr. Oldham. Given the new facts of this case, and the increased level of scrutiny applied to Mr. Oldham's conduct at the time this action was taken, the Court submits this Order of Contempt to the Committee as evidence that Mr. Oldham lacks the capacity to understand and comprehend the professional and ethical nature of the practice of law, and as a sanction for Mr. Oldham's contemptuous conduct, the Court recommends that the Committee consider prohibiting Mr. Oldham from continuing to engage in the practice of law; it is further
>
>**ORDERED** that, to the extent he has not already done so, Mr. Oldham shall provide **all** of his bankruptcy clients with a written notice of the suspension and the limitations the suspension has on his ability to provide them with adequate legal representation. Mr. Oldham shall provide the Court with an affidavit affirming that he has provided such notice, and shall attach to that affidavit copies of said notices that are representative in both substance and style to those actually provided to his clients. Mr. Oldham shall submit this certificate of compliance (as well as any other documents required to be submitted to the Court as a result of this Order) directly to this Court's Courtroom Deputy; it is further,
>
>**ORDERED** that Mr. Oldham shall provide the Court with a list of every bankruptcy case that he is the attorney of record in as of the date of this Order. Mr. Oldham shall state on that list whether arrangements have been made for substituted counsel in each case. Mr. Oldham shall provide this list to the Court within **fourteen (14) days** of the entry of this Order.

*In re Burnett*, Nos. 3:09BK13432, 3:11BK12581, 455 B.R. 187, 202 (Bankr. E.D. Ark. 2011) (footnote omitted).

On June 20, Oldham appealed the Order of Contempt but not the Burnett Order to this Court.

**II.**

Oldham argues that the bankruptcy court erred when it found him in civil contempt because the Burnett Order was too vague to be enforced by a contempt order, *see In re Medlock*, 406 F.3d 1066, 1071 (8th Cir. 2005); because the sanctions imposed, taken as a whole, were criminal in nature, not civil, so they were beyond the authority of the bankruptcy court in the circumstances of this case, *In re Ragar*, 3 F.3d 1174 (8th Cir. 1993); and because the bankruptcy court abused its

discretion by finding him in contempt. At oral argument, the trustee conceded that characterizing the discipline imposed in the Order of Contempt as civil contempt was error. The trustee argues, however, that this Court should affirm because the discipline imposed by the bankruptcy court in the Order of Contempt falls within the court's inherent power to regulate the conduct of attorneys appearing before it.

In the Order of Contempt, the bankruptcy court imposed the following discipline: (1) continuation of Oldham's suspension from practicing in bankruptcy court; (2) referral of the matter, as a supplement, to the Arkansas Supreme Court Committee on Professional Conduct, as evidence that Oldham is not competent to practice law and with the recommendation that the Committee consider disbarment; (3) ordering Oldham to inform his clients of his suspension, to the extent he had not already done so, and provide the bankruptcy court with an affidavit stating that he had done so; and (4) ordering Oldham to provide the bankruptcy court with a list of all bankruptcy cases in which he was attorney of record as of the date of the order. Oldham did not appeal the original suspension and does not object to its reiteration in the Order of Contempt. Nor does he object to the final two commands; indeed, he has already complied with them. Rather, Oldham's only objection to the discipline imposed is to the bankruptcy court's second referral to the Committee on Professional Conduct and the recommendation that the committee consider disbarring him.

The initial issue is whether the bankruptcy court erred by characterizing its order as civil contempt. "A district court may impose civil contempt sanctions for one of two purposes: to compensate parties aggrieved by contumacious conduct or to coerce compliance with the court's orders." *Chaganti & Assoc., P.C. v. Nowotny*, 470 F.3d 1215, 1224 (8th Cir. 2006) (citing *United States v. United Mine Workers of Am.*, 330 U.S. 258, 303-04, 67 S. Ct. 677, 701, 91 L. Ed. 884

(1947)). The hallmark of a coercive civil contempt order is that the party subject to the order can avoid or purge contempt by complying with the court's injunctive decree. *Jake's Ltd., Inc. v. City of Coates*, 356 F.3d 896, 902 (8th Cir. 2004) (citing *Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 836-37, 114 S. Ct. 2552, 2562, 129 L. Ed. 2d 642 (1994)). The bankruptcy court's Order of Contempt was not designed to compensate any parties nor to coerce Oldham into compliance, and Oldham could not avoid contempt or purge himself of contempt by complying with the Burnett Order, which is why the parties agree that the bankruptcy court erred in characterizing the sanctions imposed as civil contempt.

Although Oldham contends that the discipline imposed should be characterized as criminal contempt, that contention is without merit. When a court finds a person in criminal contempt, the penalties imposed are punitive. *Bagwell*, 512 U.S. at 828, 114 S. Ct. at 2557. Examples of criminal penalties imposed for criminal contempt include a fixed sentence of imprisonment imposed for a completed act of disobedience and a flat unconditional fine that cannot be reduced or avoided through compliance. *Id*. at 828-29, 114 S. Ct. at 2558. Here, the bankruptcy court imposed no term of imprisonment, no fine, nor any other sanction that could be characterized as a criminal penalty. Instead, the bankruptcy court reiterated a prior order suspending Oldham from practicing in that court and referred him to the Committee on Professional Conduct with a recommendation that the Committee consider disbarment. As the Seventh Circuit has said:

> [D]isbarment and suspension proceedings are neither civil nor criminal in nature but are special proceedings, sui generis, and result from the inherent power of courts over their officers. Such proceedings are not lawsuits between parties litigant but rather are in the nature of an inquest or inquiry as to the conduct of the respondent. They are not for the purpose of punishment, but rather seek to determine the fitness of an officer of the court to continue in that capacity and to protect the courts and the public from the official ministration of persons unfit to practice. Thus the real

> question at issue in a disbarment proceeding is the public interest and an attorney's right to continue to practice a profession imbued with public trust.

*In re Echeles*, 430 F.2d 347, 349-50 (7th Cir. 1970) (citations omitted). *See also Ex parte Wall*, 107 U.S. 265, 288, 2 S. Ct. 569, 588-89, 27 L. Ed. 2d 552 (1883) ("The [disbarment] proceeding is not for the purpose of punishment, but for the purpose of preserving the courts of justice from the official ministration of persons unfit to practice in them."). The proceedings at issue here related to Oldham's fitness to practice law; they were not criminal in nature.

Moreover, the bankruptcy court stated that for a party to be held in criminal contempt the violation of the order must be willful and specifically held that Oldham's violation was not willful. Instead, the bankruptcy court found that Oldham did not "comprehend and appreciate the responsibility placed on, and professional conduct required of, an attorney who elects to represent a debtor in a bankruptcy case." Hence, as noted, the court reiterated the previous suspension, referred Oldham again to the Committee on Professional Conduct, ordered Oldham to inform his clients of his suspension, and ordered Oldham to provide the bankruptcy court with a list of all cases in which he was an attorney of record at the time.

A bankruptcy court has the inherent authority to control the conduct of the attorneys who appear before it, including imposing such discipline as disbarment, suspension, and ordering attorneys to perform actions designed to protect the interests of their clients. *See In re Nguyen*, 447 B.R. 268, 280 (9th Cir. 2011); *In re Smith*, 212 Fed. App'x 577, 578 (8th Cir. 2006); *In re Clark*, 223 F.3d 859, 864 (8th Cir. 2000); *Matter of Johnson*, 921 F.2d 585, 586 (5th Cir. 1991); *In re Echeles*, 430 F.2d at 349; *see also Chambers v. NASCO, Inc.*, 501 U.S. 32, 46, 111 S. Ct. 2123, 2133, 115 L. Ed. 2d 27 (1991). The United States Bankruptcy Court for the Eastern and Western District of Arkansas specifically affirms this power. Local Rule 2090-2 states, in pertinent part,

> The standard of professional conduct for attorneys practicing in this Court is governed by the Arkansas Rules of Professional Conduct and Federal Rule of Bankruptcy Procedure 9011. The Court will refer violations of the Arkansas Rules of Professional Conduct to the Arkansas Committee on Professional Conduct for such actions and sanctions as the Committee deems appropriate. Additionally, the Court shall have such authority and discretion as are permitted by and under the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, statutory and common law, and the express and inherent powers conferred upon them. Sanctions may include suspension or disbarment from the practice before this Court.

The actions taken by the bankruptcy court here fall squarely within the inherent authority of that court to regulate the attorneys who appear before it, as stated by Local Rule 2090-2. Neither the referral to the Committee on Professional Conduct nor the recommendation that the Committee consider disbarment was an abuse of the bankruptcy court's discretion. *See Chambers*, 501 U.S. at 55, 111 S. Ct. at 2138 ("We review a court's imposition of sanctions under its inherent power for abuse of discretion."); *In re Kujawa*, 270 F.3d 578, 582 (8th Cir. 2001) ("Regardless of whether the legal authority for imposing these sanctions is Rule 9011 or inherent authority, we believe abuse of discretion is the correct standard."). The bankruptcy court's discipline was based on a number of factual findings, none of which Oldham challenges on appeal. Included in those findings are, first, that Oldham filed the Andrews' petition and thereby took on professional responsibilities as their attorney in their bankruptcy case without disclosing to the Andrews that he would be unable to perform those responsibilities; and second, that Oldham did not need to file the petition because he could have and should have referred the Andrews to another lawyer.

Even if this Court concluded that the bankruptcy court had abused its discretion in referring the matter to the Committee, it is doubtful that the Court could provide any meaningful relief. As Oldham conceded at oral argument, the bankruptcy court, even without entering an order in a case, can refer a matter of attorney conduct to the Committee on Professional Conduct. Indeed, any

9

person can make a complaint to the Committee.  *See* Procedures of the Arkansas Supreme Court Regulating Professional Conduct of Attorneys at Law, § 2.  This Court has no power to recall the bankruptcy court's referral and recommendation to the Committee, nor does the Court exercise any power over the Committee.

The bankruptcy court's characterization of the order as "civil contempt," even if erroneous, does not require reversal because the bankruptcy court had the power to impose the discipline actually imposed in the Order of Contempt.  *See Matter of Johnson*, 921 F.2d at 586 ("Although [the bankruptcy judge] referred to the hearing as a contempt proceedings, he also indicated that he considered the proceedings to be disciplinary."); *In re Smith*, 212 Fed. Appx. 577 (8th Cir. 2006) ("The bankruptcy court had authority under 11 U.S.C. § 105 to issue the order being appealed, whether it is characterized as a sanctions order or a contempt order.").  The bankruptcy court had the authority to impose the discipline that it imposed and did not abuse its discretion in doing so.

Accordingly, the bankruptcy court is affirmed.

IT IS SO ORDERED this 3rd day of November, 2011.

*/s/ J. Leon Holmes*
J. LEON HOLMES
UNITED STATES DISTRICT JUDGE